**IN THE UNITED STATES DISTRICT COUIRT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MOHAMAD FARAH,** individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: _____ |
| **LOGISTICARE SOLUTIONS, LLC,** | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Mohamad Farah, individually and on behalf of similarly situated transportation providers, for his Collective and Class Action Complaint against Defendant LogistiCare Solutions, LLC states and alleges as follows:

### INTRODUCTION

1. Despite Defendant labelling its transportation providers "independent contractors," the law looks to the economic reality of the relationship and not the label placed on the workers. *See Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 484 (8th Cir. 2000). And here, the reality is that Plaintiff and the Class are employees under the law, and Defendant, as their employer, is required to ensure they are properly paid.

2. Plaintiff brings this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*; and as a class action under the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. §§ 290.500 *et seq*, and common law to recover unpaid minimum wages, unpaid time and overtime, improper deductions, and compensatory and liquidated damages owed to himself and similarly situated transportation providers employed by Defendant.

1

## PARTIES

3.     Plaintiff Mohamad Farah is a resident of Overland Park, Johnson County, Kansas, and was employed by Defendant as a transportation provider (despite being misclassified as an independent contractor) from approximately 2009 to early 2019. During almost all his time working for Defendant, Mr. Farah was a resident of Kansas City, Jackson County, Missouri - from approximately 2010 through August 2019. He regularly transported patients in Missouri and Kansas for Defendant (and he was even asked by Defendant to transport a patient in Oklahoma). Mr. Farah's consent to pursue his claims under the FLSA is attached hereto as Exhibit 1.

4.     Defendant LogistiCare Solutions, LLC is a Delaware corporation with its principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

5.      The FLSA authorizes court actions by private parties to recover damages for violations of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

6.     The MMWL authorizes court actions by private parties to recover damages for violations of its provisions. Jurisdiction over Plaintiff's MMWL and common law claims are based on 28 U.S.C. § 1367 (pendent claims).

7.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to claims occurred and/or emanated from this District. Specifically, Defendant engaged in substantial business here. Defendant is hired by Missouri and/or medical care organizations in the State to provide required non-emergency medical transportation, and it employs transportation providers in this District to perform these services for

2

Missouri residents, including residents of this District. Moreover, Defendant's wrongful conduct (as described herein) foreseeably affects workers in Missouri.

## FACTUAL ALLEGATIONS

8. Defendant is the largest provider of non-emergency medical transportation services in the United States.

9. Defendant provides non-emergency medical transportation across the country. It has operations in 49 states, including Missouri.

10. Defendant is hired by states and medical care organizations to provide required non-emergency medical transportation.

11. Defendant provides approximately 65,000,000 medical transportations for approximately 24,000,000 patients each year nationwide.

12. To accomplish this, Defendant employs transportation providers across the country, including in Missouri, to provide these medical transportation services.

13. Defendant has more than 5,500 transportation providers nationwide.

14. Defendant's transportation providers all have the same primary job duty of transporting patients to and from medical appointments.

15. The services performed by Defendant's transportation providers include picking patients up at their home, transporting them to their doctor, and returning them home.

16. The work of the transportation providers is of such a scope and nature that they are engaged in interstate commerce.

17. Defendant's transportation providers regularly cross state lines when providing medical transportation services.

3

18.     Further, transportation providers and their employers, like Defendant, receive and utilize funds received by states through the national Medicare program to ensure that millions of individuals who cannot get to their own medical appointment due to health or finances receive important medical care.

19.     The U.S. healthcare transportation services market, of which Defendant is a significant part, was estimated to be approximately $21,820,000,000.00 in 2017 and is expected to reach approximately $31,000,000,000.00 by 2026. https://www.globenewswire.com/news-release/2018/10/24/1626157/0/en/Healthcare-Transportation-Services-Market-in-U-S-Will-Reach-USD-31-51-Billion-By-2026-Zion-Market-Research.html.

20.     Defendant oversees transportation services for tens of millions of eligible members of Medicaid, Medicare, and commercial health plans.

21.     Based on these numbers, the transportation providers have a substantial impact on the national healthcare industry.

**Defendant's Scheme**

22.     Defendant has a policy of contracting with transportation providers, knowingly misclassifying them as independent contractors, failing to pay them the statutorily required minimum wages, time and overtime, and making them incur substantial expenses for the primary benefit of Defendant. (Plaintiff and similarly situated transportation drivers, as defined below, are collectively referred to as "Plaintiffs" and "Class Members").

23.     Even though Defendant acts as Plaintiffs' employer, it benefits greatly by misclassifying them as independent contractors.

24.     Defendant operates a scheme to treat Plaintiffs as independent contractors and shift its business expenses to its employees.

25.     Defendant requires Plaintiffs to maintain and pay for safe, legally operable, and insured automobiles when transporting patients.

26.     They incur costs for gasoline, automobile parts and fluids, repair and maintenance services, insurance, depreciation, and other automobile expenses while transporting patients for the primary benefit of Defendant.

27.     Plaintiffs also incur costs for required safety equipment, workers' compensation, payroll taxes, and accounting and legal services in order to transport patients for the primary benefit of Defendant.

28.     By treating Plaintiffs as independent contractors instead of employees, Defendant has engaged, and continues to engage, in a scheme to avoid paying them worker's compensation, unemployment, social security, payroll taxes owed by employers, and other benefits owed to employees.

29.     Defendant has also attempted, and continues to attempt, to avoid liability under wage protection statutes, federal labor laws, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act (with amendments), and other statutes.

30.     Defendant has shifted, and continues to shift, the cost of its business expenses to its employees. By doing so, Defendant is able to obtain a competitive advantage over competitors that treat employees in compliance with the law.

31.     Defendant's pay practices drive down wages and undercut fair labor practices across the industry.

32.     In addition, Defendant has been unjustly enriched by these practices.

**Plaintiffs Are Defendant's Employees**

33.     Despite classifying them as independent contractors, Defendant treats Plaintiffs like employees.

34.     Plaintiffs are legally the employees of Defendant for numerous reasons, including, but not limited to:

    a.  Defendant controls Plaintiffs' work by, among other things:

        i.   Screening drivers and vehicles used to provide medical transportation services;

        ii.  Setting "minimum" qualifications for transportation providers including, but not limited to, age, health standards, and competition of background checks and drug screens;

        iii. Requiring transportation providers to sign agreements that contain numerous mandatory terms they are required to comply with to maintain their employment;

        iv.  Inspecting transportation providers' records and qualifications on at least an annual basis; and

        v.   Establishing standards of conduct for transportation providers, which include wearing a nametag, providing personal assistance to transportees as required by their physical condition, following directives about where to park when picking up or dropping off, announcing their arrival, and addressing behavioral issues that arise during transportation;

    b.  Defendant provides detailed instructions to Plaintiffs about how to perform their jobs by, among other things:

6

     i. Setting rules regarding providing transportation services;

     ii. Mandating the type of vehicles that can be used;

     iii. Requiring vehicles to have running boards, heating and cooling, and a device capable of engaging in two-way communications;

     iv. Requiring vehicles to have a minimum floor-to-ceiling height clearance, an engine-wheelchair life interlock system, and a wheelchair securement device to qualify as a wheelchair vehicle;

     v. Mandating the type and level of insurance that transportation providers must maintain;

     vi. Calling transportation providers 24 hours before service is needed;

     vii. Mandating door-to-door or curb-to-curb assistance;

     viii. Requiring collection of payments or co-payments when applicable;

     ix. Setting rules for passengers; and

     x. Establishing guidelines for compliance, ethics, fraud, waste, abuse and HIPAA;

c. Defendant requires Plaintiffs to undergo training, including, but not limited to:

     i. safety, driver training, and passenger assistance courses; and

     ii. an annual training program that takes several days to complete;

d. Plaintiffs' services are integrated into Defendant's business operations, *i.e.*, Defendant is hired by states and medical care organizations to provide non-emergency medical transportation, and Defendant hires Plaintiffs to provide medical transportation services;

e. Plaintiffs render their services personally since Defendant:

7

      i.   Requires them to provide an appropriate level of assistance to patients when requested or when required by their physical condition;

     ii.   Requires them to provide physical support or assistance and oral directions to patients; and

   iii.   Requires that Plaintiffs can only utilize their own leased or owned vehicles and not sublet, subcontract or arrange for transportation from a third party;

f. Defendant requires set hours of work dedicated to the timing of the trips;

g. Plaintiffs are required to perform trips assigned on a daily basis and not reroute more than 15% of their trips on a monthly basis;

h. Plaintiffs have a continuing relationship with Defendant since they are required to sign agreements with Defendant to provide medical transportation services;

i. Defendant punishes Plaintiffs if they decline a ride by assigning them fewer rides;

j. Plaintiffs' work schedule is reliant on the timing of trips dictated by Defendant's computerized trip assignment system;

k. Plaintiffs are required to provide round trip services to riders such that after taking a rider to an appointment, Plaintiffs may not perform other work that could interfere with their availability to return the rider home;

l. Defendant monitors Plaintiffs' rides while in progress through GPS tracking and random curbside check-ins;

m. Plaintiffs are required to perform their services in the order or sequence set by Defendant;

n. Defendant sets the timing of pickups and drop-offs, and can take remedial action in the event of late arrivals;

8

o. Plaintiffs are required to submit reports to Defendant, including daily trip logs that contain the name of the patients that were transported, the signature of the patients, a no-show indicator when applicable, arrival time at the place of pick-up and drop-off, the names of any attendees, the signatures of any attendees, and other relevant information;

p. Defendant mandates that Plaintiffs maintain business records, including information regarding their registration with applicable state agencies, vehicle records, driver and attendant records, and trip logs for a five-year period;

q. Plaintiffs are paid based on the length of a trip;

r. Defendant can fire Plaintiffs with 60 days' notice, prohibit Plaintiffs from providing transportation services for failing to comply with "minimum" qualifications, and otherwise reserves the right to disallow performing transportation services; and

s. Plaintiffs agree to complete specific jobs, are responsible for satisfactory completion of the jobs, and suffer consequences for failure to meet Defendant's expectations regarding completion of the jobs.

**Defendant Fails to Pay Plaintiffs Minimum Wage and Overtime**

35. Defendant pays Plaintiffs based on medical transportation trips performed. The distance driven dictates how much Plaintiffs are reimbursed for each trip.

36. Defendant does not pay Plaintiffs for any time they spend waiting to pick up patients, nor does it pay them for any time they spend on administrative work such as completing daily trip logs.

37. Defendant also does not pay Plaintiffs for hours worked in excess of 40 per week.

9

38.     Defendant does not reimburse Plaintiffs for the expenses that they incur transporting patients for the primary benefit of Defendant. Defendant's systematic failure to reimburse constitutes a "kickback" to Defendant such that the wages it pays Plaintiffs are not paid free and clear of all outstanding obligations to Defendant.

39.     Plaintiff Farah worked approximately 90 hours per week, about 6 hours of which were spent doing administrative tasks and another 6 hours of which were spent waiting for transportees. On average, Defendant paid Plaintiff gross revenues of approximately $3,653.85 per week. But Plaintiff's expenses, which included items such as fuel, insurance, and maintenance, averaged approximately $3,153.85 per week. Thus, Plaintiff's average net pay was $500.00 per week, which equates to an average hourly rate of only $5.56 per hour.

40.     The federal minimum wage has been $7.25 per hour since July 24, 2009.

41.     The Missouri minimum wage was $7.85 per hour in 2018, $8.60 per hour in 2019, and is $9.45 per hour in 2020.

42.     Defendant's treatment of Plaintiffs as independent contractors causes lost wages, additional tax burdens, insurance obligations, and a variety of other compensable harm.

43.     Defendant, by itself, and by requiring Plaintiffs to incur expenses that are primarily for the benefit of Defendant, charges Plaintiffs by making deductions on invoices for things like training materials and credentialing services and exacting additional profits from them.

44.     All transportation providers classified as independent contractors by Defendant had similar experiences to those of Plaintiff Farah. They received similar pay, they incurred similar expenses, and Defendant failed to pay them their wages free and clear.

45.     Defendant's failure to pay Plaintiffs the proper wages required by law is willful.

46. Defendant's unlawful conduct as set forth herein is and has been intentional, willful, and in bad faith, and it has caused significant damages to Plaintiffs.

47. Defendant is aware or should be aware that the law required it to pay Plaintiffs minimum wages and overtime for each workweek, and that Defendant could not deduct its overhead expenses from its misclassified employees.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

48. Plaintiff brings Counts I-II as an "opt-in" collective action on behalf of himself and similarly situated transportation providers pursuant to 29 U.S.C. § 216 (b).

49. Specifically, Plaintiff brings Counts I-II on behalf of himself and as the Class Representative of the following persons (the "FLSA Class"):

> All current and former transportation providers classified as independent contractors who signed agreements with Defendant to provide transportation services in the United States, within three years of the commencement of this action.

50. This claim may be pursued by those who opt into this case pursuant to § 216 (b).

51. Plaintiff, individually and on behalf of other similarly situated transportation providers, seeks relief on a collective basis challenging Defendant's practice of failing to pay employees federal minimum wage and overtime. The number and identity of other Plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential Plaintiffs may be notified of the pendency of this action via mail and email.

52. Plaintiff and all of Defendant's transportation providers classified as independent contractors who signed agreements with Defendant to provide transportation services are similarly situated in that:

a. They have worked as transportation providers for Defendant;

b. They have signed agreements with Defendant;

c. They have transported patients using vehicles not owned or maintained by Defendant;

d. They have been classified as independent contractors;

e. They have incurred costs and expenses while transporting patients for the primary benefit of Defendant;

f. They have been subject to similar pay rates; and

g. They have been subject to the same policy of failing to pay for all time worked, failing to pay overtime, and failing to reimburse for business expenses.

53. Plaintiff brings Counts III-V as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representative of the following persons (the "Wage Class"):

All current and former transportation providers who were classified as independent contractors who signed agreements with Defendant to provide transportation services in the State of Missouri, within three years of the commencement of this action.

54. Counts III-V, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

55. Plaintiff's state law claims asserted in Counts III-V satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

56. Numerosity: On information and belief, there are hundreds of individuals who provide transportation services for Defendant in the State of Missouri, satisfying the numerosity requirement.

57.    Common questions of law or fact: There are several questions of law or fact common to the Class, including, but not limited to:

    a.    Whether Defendant's classification of Plaintiffs as independent contractors is lawful;

    b.    The standard for determining whether Defendant is an employer;

    c.    Whether Defendant improperly shifted its business expenses to Plaintiffs; and

    d.    Whether Defendant was unjustly enriched by the acts and omissions complained of herein.

58.    Typicality: A class action is appropriate because Plaintiff's claims are typical of the claims of the Class he seeks to represent. Plaintiff and Class Members work or have worked for Defendant, have signed agreements with Defendant, and have been subjected to common classification as independent contractors and policies regarding pay.

59.    Adequacy of Class Representative: Plaintiff has pledged to protect the interests of the Class and has been fairly chosen to do so.

60.    Adequacy of Class Counsel: Plaintiff's counsel have litigated and certified a substantial number of class and collective action cases, including cases involving independent contractor misclassification.

61.    A class action is appropriate because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and establish incompatible standards of conduct.

62.    A class action is appropriate because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

13

63.     A class action is appropriate in that questions of law or fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I - VIOLATION OF FLSA - MINIMUM WAGE

64.      Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

65.     At all relevant times herein, Plaintiff and all other similarly situated transportation providers in the FLSA Class have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

66.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

67.     Section 13 of the FLSA, 29 U.S.C. § 13, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated transportation providers.

68.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

69.     Defendant is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in interstate commerce.

70.     Under section 6(a) of the FLSA, 29 U.S.C. § 206(a), employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

14

71.     As alleged herein, Plaintiffs' hours worked and expenses incurred for the primary benefit of Defendant have caused Plaintiffs' wages to fall beneath the federal minimum wage.

72.     Defendant knew or should have known that its pay and deduction policies, practices, and methodologies would result in failure to compensate transportation providers at the federal minimum wage.

73.     Defendant, pursuant to its policies and practices, violated the FLSA, and continues to violate the FLSA, by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated transportation providers.

74.     Plaintiff and all similarly situated transportation providers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's transportation providers who Defendant misclassified as independent contractors and who contracted with Defendant to provide transportation services.

75.  Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage less actual wages received, after expenses, within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated transportation providers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiff and all

similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, Plaintiff and all similarly situated transportation providers in the FLSA Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the FLSA; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT II - VIOLATION OF FLSA - OVERTIME

76. Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

77.     At all relevant times herein, Plaintiff and all other similarly situated transportation providers in the FLSA Class have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

78.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

79.     Section 13 of the FLSA, 29 U.S.C. § 13, exempts certain categories of employees from federal minimum wage obligations, but none of the FLSA exemptions apply to Plaintiff or other similarly situated transportation providers.

80.     The FLSA regulates, among other things, the payment of overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).Defendant is subject to the FLSA's overtime

16

requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in interstate commerce.

81.    Under section 7 of the FLSA, 29 U.S.C. § 207, employees are entitled to be compensated at a rate not less than one and one-half times the regular rate of pay for hours worked over 40 per workweek.

82.    As alleged herein, Defendant did not compensate Plaintiffs for all hours worked, including time spent waiting to pick up patients and performing administrative tasks, let alone hours worked over 40 per workweek, which regularly resulted in failure to pay Plaintiffs overtime.

83.    Defendant knew or should have known that its pay policies, practices, and methodologies result in failure to pay transportation providers overtime.

84.    Defendant, pursuant to its policies and practices, violated the FLSA, and continues to violate the FLSA, by refusing and failing to pay overtime to Plaintiff and other similarly situated transportation providers.

85.    Plaintiff and all similarly situated transportation providers are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's transportation providers who Defendant misclassified as independent contractors and contracted with Defendant to provide transportation services.

86.    Plaintiff and all similarly situated employees are entitled to damages equal to overtime pay for all hours worked over 40 per workweek, within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

17

87. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated transportation providers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, Plaintiff and all similarly situated transportation providers in the FLSA Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the FLSA; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT III - VIOLATION OF MMWL – MINIMUM WAGE

88. Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

89. At all relevant times herein, Plaintiff and all other similarly situated transportation providers in the Wage Class have been entitled to the rights, protections, and benefits provided under the MMWL, R.S.Mo. §§ 290.500 *et seq.*

90. Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

91. Defendant contracted with Plaintiffs from Missouri.

18

92.     None of the MMWL exemptions apply to Plaintiff or other similarly situated transportation providers.

93.     The MMWL regulates, among other things, the payment of minimum wage by employers to Missouri employees. R.S.Mo. § 290.502.

94.     Defendant is subject to the MMWL's requirements since it is not a retail or service business whose annual gross sales are less than $500,000.00.

95.     Under the MMWL, Missouri employees have been entitled to be compensated at a rate of at least $7.85 per hour in 2018, $8.60 per hour in 2019, and $9.45 per hour in 2020. R.S.Mo. § 290.502.

96.     As alleged herein, Plaintiffs' hours worked and expenses incurred for the primary benefit of Defendant caused the wages of Plaintiff and all other similarly situated transportation providers in the Wage Class to fall beneath the Missouri minimum wage.

97.     Defendant, pursuant to its policies and practices, violated the MMWL, and continues to violate the MMWL, by refusing and failing to pay Missouri minimum wage to Plaintiff and other similarly situated transportation providers in the Wage Class.

98.     Plaintiff and all similarly situated transportation providers in the Wage Class are victims of a uniform and employer-based compensation and deduction policy. This uniform policy, in violation of the MMWL, has been applied, and continues to be applied, to all Defendant's transportation providers in Missouri who Defendant misclassified as independent contractors and contracted with Defendant to provide transportation services.

99.     Plaintiff and all similarly situated employees in the Wage Class are entitled to damages equal to the full amount of the wage rate minus actual wages received, after expenses,

and an additional amount equal to twice the unpaid wages as liquidated damages, within two years from the date Plaintiff filed this lawsuit, plus periods of equitable tolling. § 290.527.

WHEREFORE, Plaintiff and all similarly situated transportation providers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 290.527; (4) pre-judgment and post-judgment interest as provided by law; (5) a declaration that Defendant has violated the MMWL; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

### COUNT IV – VIOLATION OF MMWL – UNPAID TIME AND OVERTIME

100.     Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

101.     At all relevant times herein, Plaintiff and all other similarly situated transportation providers in the Wage Class have been entitled to the rights, protections, and benefits provided under the MMWL, R.S.Mo. §§ 290.500 *et seq.*

102.     Plaintiffs were employed by Defendant. During the relevant time frame, Plaintiffs performed work for Defendant as employees and are properly classified as employees.

103.     Defendant contracted with Plaintiffs from Missouri.

104.     None of the MMWL exemptions apply to Plaintiff or other similarly situated transportation providers.

105.     The MMWL regulates, among other things, the payment of all time worked and overtime by employers to Missouri employees. R.S.Mo. § 290.505.

106.     Defendant is subject to the MMWL's requirements since it is not a retail or service business whose annual gross sales are less than $500,000.00.

107. Under the MMWL, Missouri employees have been entitled to be compensated at a rate of not less than one and one-half times the regular rate at which they are employed for hours worked in excess of 40 per workweek. R.S.Mo. § 290.505.

108. As alleged herein, Defendant did not compensate Plaintiffs for all hours worked, including time spent waiting to pick up patients and performing administrative tasks, let alone hours worked in excess of 40 per workweek, which regularly resulted in failure to pay Plaintiff and all other similar situated transportation providers in the Wage Class overtime under Missouri law.

109. Defendant, pursuant to its policies and practices, violated the MMWL, and continues to violate the MMWL, by refusing and failing to pay for all time worked and overtime to Plaintiff and other similarly situated transportation providers in the Wage Class.

110. Plaintiff and all similarly situated transportation providers in the Wage Class are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the MMWL, has been applied, and continues to be applied, to all Defendant's transportation providers in Missouri who Defendant misclassified as independent contractors and contracted with Defendant to provide transportation services.

111. Plaintiff and all similarly situated employees in the Wage Class are entitled to damages equal to their overtime pay, and an additional amount equal to twice the unpaid wages as liquidated damages, within two years from the date Plaintiff filed this lawsuit, plus periods of equitable tolling. § 290.527

WHEREFORE, Plaintiff and all similarly situated transportation providers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 290.527; (4) pre-judgment and

post-judgment interest as provided by law; (5) a declaration that Defendant has violated the MMWL; (6) that notice be sent to a class of similarly situated Plaintiffs; and (7) such other relief as the Court deems fair and equitable.

## COUNT V-UNJUST ENRICHMENT

112.    Plaintiff hereby incorporates all relevant allegations of the foregoing paragraphs as though fully set forth herein.

113.    Plaintiff and all similarly situated employees in the Wage Class were required to have vehicles that were in working order to perform their job duties for Defendant, as well as safety equipment, insurance, workers' compensation, and otherwise pay for payroll taxes, accounting and legal services, gas, repairs, and maintenance in support of their effort to transport patients for Defendant. Defendant did not reimburse them for the cost of the vehicles, maintenance of the vehicles, equipment they purchased, and/or expenses they incurred for the primary benefit of Defendant.

114.    Plaintiff and all similarly situated employees in the Wage Class were employees of Defendant. As such, they should have been reimbursed for all reasonable expenses they incurred in the performance of their required job duties. Defendant was unjustly enriched by not having to pay for the vehicles, vehicle maintenance, equipment, and/or other expenses that were incurred for its benefit.

115.    It would be inequitable and unjust for Defendant to retain these wrongfully retained business expenses.

116.    Defendant's retention of these wrongfully-retained expenses would violate the fundamental principles of justice, equity, and good conscience.

117.    Plaintiff and the Wage Class are entitled to restitution of the profits unjustly obtained by Defendant, plus interest.

WHEREFORE, Plaintiff and all similarly situated transportation providers in the Wage Class demand judgment against Defendant and request: (1) compensatory damages (2) pre- and post-judgment interest as provided by law; (3) that notice be sent to a class of similarly situated Plaintiffs; and (4) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to jury trial.

July 22, 2020                                              Respectfully Submitted,

**REAVEY LAW LLC**

/s/ Kevin C. Koc
Patrick G. Reavey MO# 47365
Kevin C. Koc MO# 56955
Livestock Exchange Building
1600 Genessee Suite 303
Kansas City, MO 64102
Ph: 816.474.6300
Fax: 816.474.6302
Email: preavey@reaveylaw.com
Email: kkoc@reaveylaw.com

and

Jack McInnes (MO # 56904)
Ben Ashworth (MO # 67933)
**MCINNES LAW LLC**
1900 West 75th Street, Suite 220
Prairie Village, KS 66208
Telephone: (913) 220-2488
Facsimile: (913) 273-1671
Email: jack@mcinnes-law.com

**ATTORNEYS FOR PLAINTIFF**