IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MOHAMAD FARAH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| LOGISTICARE SOLUTIONS, LLC, | ) ) |
| Defendant. | ) |

Case No. 4:20-00578-CV-RK

## ORDER

Before the Court is Defendant Logisticare Solutions, LLC's motion to compel bilateral arbitration. (Doc. 10.) The motion is fully briefed. (Docs. 11, 22, 23, 26.) After careful consideration the motion is **DENIED** without prejudice.

### Background[1]

Defendant LogistiCare Solutions, LLC "is the nation's largest manager of non-emergency medical transportation benefits in the United States." (Doc. 11, p. 2). States and medical care organizations hire Defendant to provide transportation services to patients. The primary job duty of Defendant's transportation providers is to transport patients to and from medical appointments.

Plaintiff Mohamed Farah is a former transportation provider for Defendant. Plaintiff, on behalf of his company, Dalmar Transportation ("Dalmar"), signed an agreement with Defendant to provide transportation services. (*See* Doc. 22-1.)[2] That agreement contained an arbitration clause. The arbitration clause mandates disputes be submitted to arbitration under the rules of the American Arbitration Association ("AAA") if they could not be resolved through the "complaint, grievance and appeal process as set forth in the Provider Manual." (*Id.*, p. 22.) The arbitration clause also says, "[t]he provisions of this Section shall survive the termination of this Agreement." (*Id.*)

---

[1] Unless otherwise noted, the following facts are taken from the Complaint. (Doc. 1.)

[2] Defendant originally cited to an agreement that was allegedly not signed by Plaintiff. Plaintiff in response has provided an agreement he signed. (Doc. 22-1.) Defendant, in its reply, argues that even under the signed agreement, arbitration is required. Without ruling on the applicability or impact either of these agreements have on other issues, the Court will use the agreement signed by Plaintiff for purposes of the present motion.

During the course of his work for Defendant, Plaintiff allegedly crossed state lines regularly while picking up patients, driving them to appointments, and returning them to their homes. Further, Plaintiff has alleged Defendant and its transportation providers receive and utilize funds paid to states through the national Medicare program to ensure that millions of individuals who cannot get to medical appointments on their own (due to health or finances) receive important medical care.

Plaintiff filed a putative class and collective action against Defendant on behalf of himself and similarly situated transportation providers in Missouri and throughout the United States. In his Complaint, he alleges violations of the Fair Labor Standards Act (Counts I-II), violations of the Missouri Minimum Wage Law (Counts III-IV), and unjust enrichment (Count V). Defendant has now moved to compel arbitration and stay the proceedings in this Court while arbitration is conducted.

## Discussion

### I.  A Valid Arbitration Agreement Does Not Exist

As an initial matter, the Court must first determine whether a valid arbitration clause exists. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Foster v. Sears, Roebuck & Co.*, 837 F. Supp. 1006, 1008 (W.D. Mo. 1993) (quoting *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 485 (1989)). Here, Plaintiff points to a contract signed in 2008 ("2008 contract").[3] (Doc. 22-1.) That agreement was valid for a total of five years. (*Id.*, pp. 19-20.) The contract was renewed in 2011, making the applicable date of expiration 2016 for the 2008 contract. Plaintiff argues that because the 2008 contract expired, and Defendant has not offered any additional evidence of a valid contract containing an arbitration clause, Defendant has not met its burden to prove a valid arbitration clause exists.

Defendant has responded by arguing that by seeking to enforce the terms of the agreement, Plaintiff should be estopped from arguing the arbitration provision is no longer applicable. *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) ("Nonsignatories can be bound to an arbitration agreement. . . . by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."). The question then becomes whether Plaintiff

---

[3] Defendant in its reply argues that compelling arbitration is appropriate based on the 2008 contract.

is seeking to enforce the provisions of the 2008 contract. A review of the Complaint necessitates a conclusion that he is not. Plaintiff's proposed class is limited to people who "signed agreements with Defendant to provide transportation services in the United States, within three years of the commencement of this action." (Doc. 1, ¶ 49.) Applying the most straightforward and clear interpretation of the class description, Plaintiff is seeking to sue Defendants based on an agreement that was signed between July 22, 2017 and July 22, 2020 (the date this action was filed). As that agreement has yet to be provided to the Court, and would govern the parties' relationship and any agreement to arbitrate, Defendant has not provided sufficient proof a binding arbitration agreement exists. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. App. W.D. 2011); *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (party seeking to enforce arbitration has burden to prove a valid arbitration exists). Therefore, Defendant's motion will be denied at this time.[4]

## II. Section 1 of the Federal Arbitration Act

While the Court will deny the motion, the Court finds it probative to briefly discuss the parties' arguments concerning Section 1 of the Federal Arbitration Act. Section 1, in relevant part, states "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. "[T]he residual clause of § 1 of the FAA may operate to exclude from FAA coverage the contracts of employment of all classes of transportation workers, so long as they are engaged in interstate commerce, or in work so closely related thereto as to be in practical effect part of it." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 226 (3d Cir. 2019). This exception must be afforded a narrow construction. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020). Further, Plaintiff has the burden to prove the exception precludes Arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Finally, the Court notes that resolution of this question is to be determined by the Court even if there is a delegation provision in the arbitration agreement. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 534 (2019) ("Given the statute's terms and sequencing, we agree with the First Circuit that a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration.").

---

[4] The Court notes that if Plaintiff is inclined to amend his Complaint to change the class definition, the Court would be inclined to grant leave for such request. Assuming the 2008 contract's arbitration provision governs, the Court would still deny the motion for the reasons below.

The parties agree the only issue here is whether the class of workers Plaintiff belongs to engages in interstate commerce. The Eighth Circuit has articulated a list of factors to determine whether a class of workers is so closely related to interstate commerce that they fit within the Section One exception to the FAA. The factors are as follows:

> [F]irst, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

*Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005). The parties have argued the applicability of these factors, and Defendant has provided a signed declaration articulating certain facts about the class of workers to which Plaintiff belongs. However, the Court agrees with Plaintiff that limited discovery would be probative, if not necessary, to fully evaluate the factors sufficiently. For instance, the Court believes Plaintiff should have the opportunity to investigate or rebut the assertions made in Defendant's declaration.[5] As discovery has yet to take place in this case, the Court cannot rule at this time as to whether Section 1 of the Federal Arbitration Act precludes arbitration of this matter.

## III. An Arbitration Agreement Under Missouri Law

As noted above, an enforceable arbitration agreement has not been provided to the Court. The parties' arguments as to whether an arbitration agreement could be enforced under Missouri law concern the specific language within an agreement. Therefore, the Court cannot rule at this time whether an arbitration agreement could be enforced under Missouri law.[6]

---

[5] The Court also notes that Defendant argues less than 1% of trips taken by the class of workers to which Plaintiff belongs involve interstate commerce. However, Defendant cites no authority indicating a percentage threshold required to be considered "engaged in interstate commerce." If a supplemental motion is filed, the Court requests additional briefing on this argument.

[6] Of course, if an agreement is produced and another State's law is invoked, the Court would evaluate the applicability under such law.

## Conclusion

Accordingly, and after careful consideration, the motion to compel bilateral arbitration (Doc. 10) is **DENIED** without prejudice.

**IT IS SO ORDERED**.

                                                  s/ Roseann A. Ketchmark
                                                  ROSEANN A. KETCHMARK, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATED: December 8, 2020